1    **WO**

2

3

4

5

6                 **IN THE UNITED STATES DISTRICT COURT**

7                     **FOR THE DISTRICT OF ARIZONA**

8

9    Michael D Berry,                              No. CV-25-08097-PCT-DWL

10                     Plaintiff,                   **ORDER**

11    v.

12    Cynthia DeLaTorre Berry, et al.,

13                     Defendants.

14

15          On July 25, 2025, the Court screened Plaintiff's complaint pursuant to 28 U.S.C.

16    § 1915(e)(2) and dismissed it with limited leave to amend. (Doc. 5.)

17          On August 7, 2025, Plaintiff[1] filed a first amended complaint ("FAC"). (Doc. 7.)

18    This order screens the FAC pursuant to § 1915(e)(2) and dismisses it without leave to

19    amend.

20          The Court's July 25, 2025 order sets forth the legal standard for § 1915(e)(2)

21    screenings (Doc. 5 at 1-2), which need not be repeated here. That order granted leave to

22    amend as to Count Five (conspiracy to violate civil rights, in violation of 42 U.S.C.

23    § 1985(2) and (3)), Count Seven (intentional infliction of emotional distress), and Count

24    Eight (negligent supervision and training), as well as to Count Two (violation of Equal

25    Protection Clause) but only as to Defendants Jordan Wiley and Jaime Ryan of the Arizona

26    ─────────────

27    [1]     The FAC purports to add Elizabeth Anderson, Plaintiff's fiancée, as a new plaintiff.
      Ms. Anderson has not applied for leave to proceed in forma pauperis. As no filing fee has
      been paid, her claims cannot go forth unless and until she pays the filing fee or obtains

28    leave to proceed in forma pauperis. However, this order denying the FAC without leave
      to amend moots the issue of Ms. Anderson's nonpayment.

1   Department of Child Safety ("DCS") in their individual capacities. (*Id.* at 9.)

2          Plaintiff's amendments do not cure the failures identified in the original screening

3   order.

4          As for Count Two,[2] violation of Equal Protection Clause, the Court's original

5   screening order stated as follows:

> Construed with the utmost liberality, the complaint accuses individual DCS
> employees of failing to investigate Plaintiff's allegations of child abuse, but
> such a claim is not actionable under federal law. *Gini v. Las Vegas
> Metropolitan Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) ("The police
> have no affirmative obligation to investigate a crime in a particular way or to
> protect one citizen from another even when one citizen deprives the other of
> liberty of property."). Although the complaint asserts that the failure to
> investigate was based on Plaintiff's gender, no factual allegations support
> this conclusory assertion. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th
> Cir.1985) ("[W]e can find no instance where the courts have recognized
> inadequate investigation as sufficient to state a civil rights claim unless there
> was another recognized constitutional right involved.").

13  (Doc. 5 at 5.)

14         The FAC adds various facts specific to Plaintiff's family situation: that "the minor

15  children are currently enrolled in home schooling which will further enable their rapidly

16  deteriorating [academic performance]," that Cynthia's move from the marital home caused

17  mail Plaintiff sent to his children to be returned to him, and that the newly-added

18  Defendants, Deputies Kim, Andrews, and Margenson, "participated in a false arrest . . .

19  targeting Plaintiffs with a 'Bait and Switch' during an attempt to report Ongoing Child

20  Abuse." (Doc. 7 at 11-12.) These added facts do not support the assertion that Plaintiff

21  was a victim of gender-based discrimination.[3] Thus, the FAC does not state a claim for

22  violation of the Equal Protection Clause.

23         As for Count Five, the Court's original screening order stated as follows:

24  > "Section 1985(2), in relevant part, proscribes conspiracies to 'deter, by force,
25  > intimidation, or threat, any party or witness in any court of the United States

---

[2]     In the FAC, Plaintiff retained the numbering of the counts as they were in the
original complaint, despite the elimination of Counts One, Three, Four, and Six, as these
counts were dismissed without leave to amend.

[3]     Indeed, the addition of an allegation that both Plaintiff *and his fiancée*—a woman—
were somehow targeted in a false arrest further undermines the notion that gender
discrimination was at play.

1

2

3

from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified.'" *Haddle v. Garrison*, 525 U.S. 121, 124 (1998). Plaintiff has alleged no facts that support such a claim.

4

5

6

7

8

9

10

11

12

Section 1985(3), "also known as the Ku Klux Klan Act of 1871," which "was enacted to protect southern Black people from the violence of the vindictive Ku Klux Klan," is "split into two clauses": the "equal protection clause" and the "support-or-advocacy clause," the latter of which applies only to voter suppression. *Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1067-72 (C.D. Cal. 2024). The equal protection clause of § 1985(3) "requires: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in their person or property or deprived of any right or privilege of a citizen of the United States." *Id.* at 1068-69. "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff has alleged no facts to support such a claim.

13

(Doc. 5 at 6.)

14

15

16

17

18

19

The FAC still does not include any allegations suggesting that any person was deterred by force, intimidation, or threat from attending court or testifying freely or that any person was injured on account of court attendance or testimony. The FAC also does not allege voter suppression or a conspiracy to deprive any person of the equal protection of the laws or equal privileges and immunities. Thus, the FAC does not state a claim under § 1985(2) or § 1985(3).

20

21

As for Count Seven, intentional infliction of emotional distress ("IIED"), the Court's original screening order stated as follows:

22

23

24

25

26

27

28

"The three required elements are: *first,* the conduct by the defendant must be 'extreme' and 'outrageous'; *second,* the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and *third,* severe emotional distress must indeed occur as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). "The trial court must determine whether the acts complained of are sufficiently extreme and outrageous to state a claim for relief. A plaintiff must show that the defendant's acts were so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Only when reasonable minds could differ in determining whether conduct is sufficiently extreme or outrageous does the issue go to the jury." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (cleaned up). The Court cannot conclude that the litigation

1
2
3

> conduct alleged in the complaint, including applying for and obtaining orders of protection against Plaintiff, rises to the level of stating a claim for IIED. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 747 (9th Cir. 2004) (false accusations alone not enough to constitute an IIED claim under Arizona law).

4
5
6
7

> Furthermore, "a line of demarcation should be drawn between conduct likely to cause mere 'emotional distress' and that causing 'severe emotional distress.'" *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 501 (Ariz. Ct. App. 1982). Plaintiff alleges "sleep loss, depression, loss of reputation, and family breakdown." (Doc. 1 at 8.) This is insufficient to maintain an IIED claim. *Midas Muffler*, 650 P.2d at 501 (crying and sleep loss insufficient); *Bodett*, 366 F.3d at 747 (shock, stress, depression, estrangement from friends and co-workers, distress of family insufficient).

8
9

(Doc. 5 at 7-8.)

10
11
12
13
14
15

The FAC adds one new allegation to support this claim, pertaining only to two newly added Defendants: "Deputies Kim and Margenson participated in a coordinated takedown of Plaintiffs on May 21, 2025, based on pretext and misinformation, after years of documented state negligence and misconduct." (Doc. 7 at 16.) Aside from being vague and conclusory, this allegation fails to address the insufficiency regarding the "severe emotional distress" element of an IIED claim. Thus, the FAC does not state a claim for IIED.

16
17
18
19
20
21
22
23

As for Count Eight, negligent supervision and training, the original complaint asserted this claim against the Yavapai County Sheriff's Office ("YCSO") and DCS, both of which are non-jural entities that cannot be sued. (Doc. 5 at 8.) The FAC reasserts this claim, without any alteration of the supporting facts, this time naming the Verde River RV Resort and various individual deputies. (Doc. 7 at 16-17.) The FAC characterizes these Defendants as "agencies" (*id.* at 16), but they clearly are not agencies. At any rate, there are no factual allegations indicating that these Defendants had a duty to supervise or train anyone. Thus, the FAC does not state a claim for negligent supervision and training.

24
25
26
27
28

Plaintiff also added two new claims, asserted only against newly named Defendants: Count Nine, a claim against for wrongful arrest and malicious prosecution against Deputies Kim, Margenson, and Andrews, and Count Ten, a claim for "retaliatory eviction, housing discrimination, retaliatory arrest/law enforcement misconduct" under the Fair Housing Act, ADA Title II, and the Violence Against Women Act ("VAWA").

1    As for Count Nine, "malicious prosecution . . . requires the allegation and proof of

2    termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey*,

3    512 U.S. 477 (1994).  The FAC alleges that the criminal charges "remain unresolved"

4    (Doc. 7 at 17), so there is no allegation of a favorable termination.  Moreover, the

5    allegations are vague and conclusory.  Although the FAC alleges that Plaintiff and his

6    fiancée "were wrongfully arrested on May 21, 2025 . . . with no probable cause" (*id.*), there

7    are no factual allegations setting forth any of the circumstances surrounding this arrest—

8    what events led to the arrest, what transpired when the deputies arrived, which deputies

9    arrested Plaintiff, or what the nature of the charges were.  The FAC alleges that "deputies

10   fabricated reports" (*id.*), but there are no allegations as to what these allegedly fabricated

11   reports contain.  The FAC alleges that "one of the Plaintiffs" was not read *Miranda* rights

12   (*id.*), but Plaintiff is the only plaintiff properly litigating this action, and this vague

13   allegation does not establish whether he was read *Miranda* rights.  Thus, the FAC does not

14   state a claim for wrongful arrest or malicious prosecution.

15   As for Count Ten, to the extent this count reasserts violations of the ADA and

16   VAWA, those claims were dismissed without leave to amend in the Court's original

17   screening order and are struck from the FAC.  (Doc. 5 at 6-7.)

18   To the extent that Plaintiff alleges a violation of the Fair Housing Act because he

19   and his fiancée were evicted from an RV park managed by newly-added Defendant Verde

20   River RV Resort ("Verde River") on July 12, 2025 "after filing protected legal documents

21   and whistleblower evidence in court" in order to "punish" Plaintiff "for asserting civil

22   rights," the allegations are vague and conclusory.  The FAC fails to allege any information

23   about the nature of the legal proceeding in which Plaintiff allegedly filed "protected legal

24   documents and whistleblower evidence," whether the documents and evidence had

25   anything to do with Verde River, and what the eviction notice stated.  "To establish

26   retaliatory eviction under the FHA, the tenant must prove (1) the tenant engaged in a

27   protected activity, (2) an adverse housing consequence causally linked to that activity, and

28   (3) resulting damage." *West v. City & Cnty. of San Francisco*, 2022 WL 1556415, *14

- 5 -

1    (N.D. Cal. 2022).   Stripping away the legal conclusions, which "are not entitled to the

2    presumption of truth," *Iqbal*, 556 U.S. at 679-80, there are no factual allegations showing

3    that Plaintiff engaged in a protected activity or that his eviction was causally linked to that

4    activity.   *See, e.g.*, *Iula v. Voos*, 2023 WL 8845461, *4 (S.D. Cal. 2023) (dismissing

5    complaint that fails to plead facts demonstrating either a pattern or antagonism or temporal

6    proximity between protected activities and eviction to establish causation).   Thus, the FAC

7    does not state a claim under the Fair Housing Act.

8         Count X also includes a somewhat unrelated claim for "retaliatory arrest/law

9    enforcement misconduct," based on occurrences a few weeks after Plaintiff received an

10   eviction notice.   (Doc. 7 at 17-18.)   The FAC alleges that on August 5, 2025, Plaintiff

11   received a phone call from Defendant YCSO Deputy Margenson (who "previously

12   provided sworn testimony before a Grand Jury regarding Plaintiff's unrelated criminal

13   case," which the FAC asserts is a "clear conflict of interest"), accusing Plaintiff of filing a

14   fraudulent police report "related to an unauthorized travel trailer parked on [Plaintiff's] co-

15   owned marital property" and asserting that the fraudulent police report constituted a

16   violation of release conditions.   (*Id.* at 18.)   The FAC does not allege facts suggesting that

17   Plaintiff was arrested—a phone call, without more, is not an arrest.   As to whether the

18   phone call could constitute "law enforcement misconduct," it is not clear what the legal

19   basis of this claim is, and at any rate, the facts alleged are insufficient to support any cause

20   of action.

21        The Court will therefore dismiss this action without leave to amend for failure to

22   state a claim pursuant to 28 U.S.C. § 1915(e).  See *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261

23   (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed pro

24   se plaintiff regarding deficiencies in prior order dismissing claim with leave to amend);

25   *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district

26   court's discretion to deny leave to amend is particularly broad where plaintiff has

27   previously amended the complaint.").

28        Accordingly,

1      **IT IS ORDERED** that the FAC (Doc. 7) is **dismissed without leave to amend**.

2   The Clerk of Court shall terminate the action.

3         Dated this 18th day of August, 2025.

4

5

6                                                  _____
                                                   Dominic W. Lanza
7                                                  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28